UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| JOSE CASTRO, | : | |
| Plaintiff, | : | 11 Civ. 1342 (AJP) |
| -against- | : | **OPINION AND ORDER** |
| 32 BJ UNION, | : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

      Pro se plaintiff Jose Castro brings this action against defendant 32 BJ Union ("Local 32BJ" or the "Union"), alleging that his employer Covenant Aviation Security ("CAS") breached the collective bargaining agreement between CAS and the Union by not paying him at the correct wage rate.  (Dkt. No. 10: Am. Compl. ¶¶ 1, 2; Dkt. No. 2: Compl. ¶ III.)[1]

      Presently before the Court is the Union's summary judgment motion.  (Dkt. No. 25: Notice of Motion.)  The parties have consented to decision of this case by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Dkt. No. 24.)  For the reasons set forth below, the Union's summary judgment motion is GRANTED.

---

[1]    Castro initially filed a complaint on February 18, 2011.  (Compl.)  On April 14, 2011, Castro filed an amended complaint because he "left out some important detail and information" in the original complaint.  (Am. Compl. at p. 2.)  On April 15, 2011, the Court ordered Castro to file a second amended complaint because his first amended complaint did not "repeat the allegations of his original complaint" but "merely provided additional information concerning [his] complaint."  (Dkt. No. 11: 4/15/11 Order.)  In response, Castro filed a second amended complaint that consisted of a cover page, his first two complaints stapled together and various exhibits with little explanation or description.  (Dkt. No. 12: 2d Am. Compl.)  Although not what the Court had in mind, the Court will cite to the original, first or second amended complaints as necessary.

## FACTS

Castro has been a member of Local 32BJ "for about 3 years." (Dkt. No. 33: Castro Br. Att. at 10: Castro 1/13/11 Aff. ¶ 2; Castro Br. Att. at 16: Castro 2/17/11 Aff. ¶ 2.)[2] Between January 2008 and February 2011, Castro worked for CAS as a security officer at LaGuardia Airport. (Dkt. No. 27: Union Rule 56.1 Stmt. ¶ 2; Dkt. No. 28: Hogan 7/11/11 Aff. ¶ 4; Castro 1/13/11 Aff. ¶ 1; Castro 2/17/11 Aff. ¶ 1.) The terms and conditions of employment for CAS security personnel (including Castro) were established under a collective bargaining agreement ("CBA") between CAS and the Union. (Union Rule 56.1 Stmt. ¶ 4; Hogan 7/11/11 Aff. ¶ 6 & Ex. A: CBA; see Castro 1/13/11 Aff. ¶ 2.)

Article IX(2) of the CBA sets forth the minimum hourly wage rates for CAS employees from 2007 to 2010. (CBA Art. IX(2)(a)-(d).) Article IX(2) of the CBA provides the following minimum hourly wage rates for "Airport Security Agents": $15.32 in 2007, $15.86 after March 1, 2008, $16.41 after March 1, 2009, and $16.99 after March 1, 2010. (CBA Art. IX(2)(a)-(d).) However, Article XXII of the CBA, referred to as the "Contingency Clause," states:

> The wages and benefits set forth in Article IX(C)-(E) . . . are subject to CAS receiving the necessary monetary adjustment to fully fund for each affected year the associated increases in wages and benefits. In the event that the required increase in contract funding is not provided, Articles IX(C)-(E) . . . are null and void. CAS will notify the Union to that effect on or before February 15, 2008, and the parties agree to meet no later than March 1, 2008 for the purpose of re-negotiating those provisions.

(CBA Art. XXII(1).)[3]

---

[2] References to page numbers for the attachments to Castro's brief are to those placed on it by the ECF system.

[3] On October 12, 2007, a side letter to the CBA corrected an error in the Contingency Clause:
(continued...)

In early 2009, Castro (and other Union members) complained to the Union about not receiving the wage increases specified in CBA Article IX(2)(b)-(c). (Union Rule 56.1 Stmt. ¶ 10; Hogan 7/11/11 Aff. ¶ 11; Castro Br. Att. at 28: 3/6/09 Castro Compl. Form.) The Union "initiated a grievance under the CBA on behalf of all covered CAS employees," including Castro, "claiming that CAS violated the CBA" by not providing the wage increases specified in Article IX(2) and by not notifying the Union by February 15, 2008 that funding was not provided as specified in Article XXII. (Union Rule 56.1 Stmt. ¶¶ 13-14; Hogan 7/11/11 Aff. ¶¶ 12-13.) The Union and CAS arbitrated the grievance before Arbitrator Richard Adelman. (Union Rule 56.1 Stmt. ¶ 16; Hogan 7/11/11 Aff. ¶ 15 & Ex. B: Opinion & Award.)[4]

On December 22, 2009, Arbitrator Adelman issued an Opinion and Award holding that CAS "did not violate the [CBA] by failing to provide unit employees with the wages and benefits set forth in Article IX(C)-(E)" because CAS did not receive the funding from the Port Authority specified in the Article XXII Contingency Clause. (Opinion & Award at 5-6.) Arbitrator Adelman found Article IX(2) "null and void" under the Contingency Clause. (Opinion & Award at 6.) Arbitrator Adelman also found that CAS had not violated the CBA by failing to notify the Union by February 15, 2008 that it had not received the requisite funding, since "it is undisputed that

---

[3]     (...continued)
references to "'Article IX(C)-(E)' should be corrected to read 'Article IX(2)(b),(c) and (d).'" (CBA at p. 20; see Union Rule 56.1 Stmt. ¶ 6 n.1; Hogan 7/11/11 Aff. ¶ 9 n.2.)

[4]     Pursuant to the CBA, all grievances must be resolved through the process outlined in Article XV. (CBA Art. XV(1)-(6).) When a complaint arises, the Union must first try to resolve the grievance through cooperative means with CAS. (CBA Art. XV(2).) If the dispute is not settled, the Union may file a written grievance with CAS, which may be appealed. (CBA Art. XV(4)-(5).) If still unresolved, the Union and CAS may proceed to arbitration, where the arbitrator's decision shall be "final and binding." (CBA Art. XV(6).)

the Union was not only aware that the Port Authority had not provided the funding, but that the Union was meeting with the Port Authority in order to try to obtain the necessary funding." (Opinion & Award at 5.)

The Union negotiated new wage and benefits terms with CAS, which were executed on June 3, 2010.  (Union Rule 56.1 Stmt. ¶ 22; Hogan Aff ¶ 21 & Ex. C: 6/3/10 CBA Amendment.) Thereafter, CAS paid Castro according to the new agreement.  (Union Rule 56.1 Stmt. ¶ 24; Hogan 7/11/11 Aff. ¶ 22.)

On January 12, 2011, Castro filed a complaint with the State Labor Board alleging that CAS had not paid him the wage increases specified in CBA Article IX(2).  (2d Am. Compl. Ex. D: 1/12/11 Castro Certified Ltr.)  Castro claimed that, contrary to the positions of CAS and the Union, CAS did in fact receive the necessary funding specified in the Contingency Clause.  (1/12/11 Castro Certified Ltr.)  As proof, Castro cited an April 2010 settlement between CAS and the Port Authority.  (1/12/11 Castro Certified Ltr; see 2d Am. Compl. Ex. C: 4/29/10 Port Auth. Comm. Meeting Summary.)  According to a Port Authority memorandum, a Port Authority audit had found that CAS paid its employees less than CAS proposed in its November 2, 2006 "Best and Final Offer" used to obtain an airport security contract with the Port Authority.  (4/29/10 Port Auth. Comm. Meeting Summary at 26.)  Pursuant to the settlement, CAS agreed that in addition to paying the Port Authority $1 million, CAS "would pay direct wages and contribute toward the benefits of its employees at the level contained" in its Best and Final Offer beginning April 1, 2010.  (4/29/10 Port Auth. Comm. Meeting Summary at 26-27.)

The Union has met with Castro and explained that the wage rates in Article IX(2) of the CBA were declared invalid by Arbitrator Adelman, and that the applicable wage rates were those specified in the 2010 CBA Amendment.  (Union Rule 56.1 Stmt. ¶ 25; Hogan 7/11/11 Aff. ¶ 23.)

On February 18, 2011, Castro commenced this action, asserting that CAS breached the CBA by not paying him the correct wage under Article IX(2) (Dkt. No. 10: Am. Compl. ¶¶ 1, 2; Dkt. No. 2: Compl. ¶ III), and that the Union breached its duty of fair representation by failing to resolve his seniority-based claims (Am. Compl. ¶ 3).  The Court dismissed without prejudice Castro's seniority claim, with his consent, because it is still subject to arbitration.  (Dkt. No. 23: 6/2/11 Order ¶ 1.)

## <u>ANALYSIS</u>

### I.    <u>SUMMARY JUDGMENT STANDARD</u>

Rule 56(a) of the Federal Rules of Civil Procedure provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); <u>see also</u>, <u>e.g.</u>, <u>Celotex Corp.</u> v. <u>Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); <u>Lang</u> v. <u>Ret. Living Pub. Co.</u>, 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment.  <u>See</u>, <u>e.g.</u>, <u>Adickes</u> v. <u>S.H. Kress & Co.</u>, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); <u>Chambers</u> v. <u>TRM Copy Ctrs. Corp.</u>, 43 F.3d 29, 36 (2d Cir. 1994); <u>Gallo</u> v. <u>Prudential Residential Servs., Ltd. P'ship</u>, 22 F.3d 1219, 1223 (2d Cir. 1994).  The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support

the non-moving party's case on an issue on which the non-movant has the burden of proof.  See, e.g.,

Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53.

>        To defeat a summary judgment motion, the non-moving party must do "more than
simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus.
Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  The non-moving party
normally must set out specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(c)(1); see,
e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S. Ct. at 1356;
Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (At summary judgment, "[t]he time
has come . . . 'to put up or shut up.'" (citations omitted)), cert. denied, 540 U.S. 811, 124 S. Ct. 53
(2003).

>        In evaluating the record to determine whether there is a genuine issue as to any
material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are
to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513.[5/]
The Court draws all inferences in favor of the nonmoving party only after determining that such
inferences are reasonable, considering all the evidence presented.  See, e.g., Apex Oil Co. v.
DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987).  "If, as to
the issue on which summary judgment is sought, there is any evidence in the record from any source
from which a reasonable inference could be drawn in favor of the nonmoving party, summary
judgment is improper."  Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 37.

---

[5/]        See also, e.g., Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004); Chambers v. TRM
Copy Ctrs. Corp., 43 F.3d at 36; Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d
at 1223.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact. See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S. Ct. 1570 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted." Id. at 248, 106 S. Ct. at 2510 (citations omitted); see also, e.g., Knight v. U.S. Fire Ins. Co., 804 F.2d at 11-12.

"The Court recognizes that it must 'must extend extra consideration' to pro se plaintiffs" and that "pro se parties are to be given special latitude on summary judgment motions." Salahuddin v. Coughlin, 999 F. Supp. 526, 535 (S.D.N.Y. 1998) (Rakoff, D.J. & Peck, M.J.) (citations & quotations omitted); see, e.g., McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (a pro se party's pleadings should be read liberally and interpreted "'to raise the strongest arguments that they suggest'").[6] "Nevertheless, proceeding pro se does not otherwise relieve a litigant from the usual requirements of summary judgment, and a pro se party's 'bald assertion,' unsupported by

---

[6]    See also, e.g., Ferran v. Town of Nassau, 471 F.3d 363, 369 (2d Cir. 2006); Fuller v. Armstrong, 204 F. App'x 987, 988 (2d Cir. 2006), cert. denied, 552 U.S. 906, 128 S. Ct. 209 (2007); Gildor v. U.S. Postal Serv., 179 F. App'x 756, 758 (2d Cir. 2006); Porter v. Coughlin, 421 F.3d 141, 144 n.2 (2d Cir. 2005); Hemphill v. New York, 380 F.3d 680, 687 (2d Cir. 2004); Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003); Johnson v. Buffalo Police Dep't, 46 F. App'x 11, 12 (2d Cir. 2002), cert. denied, 539 U.S. 959, 123 S. Ct. 2645 (2003).

evidence, is not sufficient to overcome a motion for summary judgment." <u>Cole</u> v. <u>Artuz</u>, 93 Civ. 5981, 1999 WL 983876 at *3 (S.D.N.Y. Oct. 28, 1999) (citing cases).[7/]

## II.      LOCAL 32BJ IS ENTITLED TO SUMMARY JUDGMENT DISMISSING CASTRO'S DUTY OF FAIR REPRESENTATION CLAIM

### A.      Hybrid Section 301/Fair Representation Standard

"Although formally comprised of two separate causes of action, a suit in which an employee alleges that an employer has breached a CBA and that a union has breached its duty of fair representation by failing to enforce the CBA is known as a 'hybrid § 301/fair representation claim.'" <u>Acosta</u> v. <u>Potter</u>, 410 F. Supp. 2d 298, 308 (S.D.N.Y. 2006) (citing <u>DelCostello</u> v. <u>Int'l Bhd.</u> <u>of Teamsters</u>, 462 U.S. 151, 164-65, 103 S. Ct. 2281, 2290-91 (1983), & <u>Carrion</u> v. <u>Enter. Ass'n,</u> <u>Metal Trades Branch Local Union 638</u>, 227 F.3d 29, 33-34 (2d Cir. 2000)).  "To establish a hybrid § 301/DFR [duty of fair representation] claim, a plaintiff must prove both (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation vis-a-vis the union members." <u>White</u> v. <u>White Rose Food</u>, 237 F.3d 174, 178-79 (2d

---

[7/]      <u>See also</u>, <u>e.g.</u>, <u>United States</u> v. <u>Acomb</u>, No. 99-6308, 216 F.3d 1073 (table), 2000 WL 899482 at *1 (2d Cir. June 29, 2000); <u>James</u> v. <u>Phillips</u>, 05 Civ. 1539, 2008 WL 1700125 at *3 (S.D.N.Y. Apr. 9, 2008); <u>Thompson</u> v. <u>Tracy</u>, 00 Civ. 8360, 2008 WL 190449 at *5 (S.D.N.Y. Jan. 17, 2008); <u>Bunting</u> v. <u>Nagy</u>, 452 F. Supp. 2d 447, 454 (S.D.N.Y. 2006); <u>Rodriguez</u> v. <u>McClenning</u>, 399 F. Supp. 2d 228, 234 & n.52 (S.D.N.Y. 2005); <u>Pack</u> v. <u>Artuz</u>, 348 F. Supp. 2d 63, 78 (S.D.N.Y. 2004); <u>Rector</u> v. <u>Sylvania</u>, 285 F. Supp. 2d 349, 353 (S.D.N.Y. 2003); <u>Walker</u> v. <u>Vaughan</u>, 216 F. Supp. 2d 290, 296-97 (S.D.N.Y. 2002); <u>Hussein</u> v. <u>The Waldorf-Astoria</u>, 134 F. Supp. 2d 591, 596 (S.D.N.Y. 2001) (Chin, D.J.), <u>aff'd</u>, 31 F. App'x 740 (2d Cir. 2002).

9

Cir. 2001).[8/]  "The plaintiff may sue the union or the employer, or both, but must allege violations on the part of both."  White v. White Rose Food, 237 F.3d at 179.[9/]

A claim for breach of the duty of fair representation consists of two elements.  First, 'a union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith.'"  White v. White Rose Food, 237 F.3d at 179 (quoting Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 44, 119 S. Ct. 292, 300 (1998)).[10/]  "'[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a "wide range of reasonableness," as to be irrational.'"  White v. White Rose Food, 237 F.3d at 179, 180-81 (quoting Air Line Pilots Ass'n, Int'l

---

[8/]     See also, e.g., DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. at 164-65, 103 S. Ct. at 2290-91; Arnold v. 1199 SEIU, Nos. 10-58-cv, 10-262-cv, 2011 WL 1486080 at *1 (2d Cir. Apr. 20, 2011); Pinkney v. Progressive Home Health Servs., 367 F. App'x 210, 212 (2d Cir. 2010); Soto v. ECC Indus., Inc., 358 F. App'x 220, 221 (2d Cir. 2009); Cover v. Am. Postal Workers Union-AFL-CIO, 357 F. App'x 336, 338 (2d Cir. 2009); Rosado v. Potter, 295 F. App'x 423, 424 (2d Cir. 2008); Nicholls v. Brookdale Univ. Hosp. & Med. Ctr., 204 F. App'x 40, 42 (2d Cir. 2006); Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers, 415 F.3d 279, 282 (2d Cir. 2005); Jordan v. Viacom Outdoor Group, 475 F. Supp. 2d 440, 444 (S.D.N.Y. 2007).

[9/]     Accord, e.g., DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. at 165, 103 S. Ct. at 2291; Arnold v. 1199 SEIU, 2011 WL 1486080 at *1; Saluja v. Local 1199 United Healthcare Workers E., 363 F. App'x 91, 93 (2d Cir. 2010); Baumgart v. Stony Brook Children's Serv., P.C., 249 F. App'x 851, 852 (2d Cir. 2007); Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638, 227 F.3d at 33-34.

[10/]   See also, e.g., Vaughn v. Air Line Pilots Ass'n, Int'l, 604 F.3d 703, 709 (2d Cir. 2010); Pinkney v. Progressive Home Health Servs., 367 F. App'x at 212; Saluja v. Local 1199 United Healthcare Workers E., 363 F. App'x at 93; Soto v. ECC Indus., Inc., 358 F. App'x at 221; Cover v. Am. Postal Workers Union-AFL-CIO, 357 F. App'x at 338; Nicholls v. Brookdale Univ. Hosp. & Med. Ctr., 204 F. App'x at 42; Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers, 415 F.3d at 282; Wilder v. GL Bus Lines, 258 F.3d 126, 129 (2d Cir. 2001); Jordan v. Viacom Outdoor Group, 475 F. Supp. 2d at 444.

v. O'Neill, 499 U.S. 65, 111 S. Ct. 1127 (1991)).[11] "'This "wide range of reasonableness" gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong.'" White v. White Rose Food, 237 F.3d at 179.

"A showing of '[b]ad faith requires a showing of fraudulent, deceitful, or dishonest action.'" White v. White Rose Food, 237 F.3d at 179 (quoting Sim v. N.Y. Mailers' Union No. 6, 166 F.3d 465, 472 (2d Cir. 1999)); accord, e.g., Tomney v. Int'l Ctr. for the Disabled, 357 F. Supp. 2d at 735. While a union cannot discriminate among employees based on improper factors (such as race or union membership), "'the union has broad discretion to adjust the demands of competing groups within its constituency as long as it does not act arbitrarily.'" Ryan v. N.Y. Newspaper Printing Pressmen's Union No. 2, 590 F.2d 451, 455 (2d Cir. 1979); accord, e.g., Acosta v. Potter, 410 F. Supp. 2d at 308-09.

"A union has 'broad discretion in its decision whether and how to pursue an employee's grievance against an employer.'" Tomney v. Int'l Ctr. for the Disabled, 357 F. Supp. 2d at 737; see also, e.g., Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 567-68, 110 S. Ct. 1339, 1346 (1990). "This 'discretion is essential to the proper functioning of the collective-bargaining system. Union supervision of employee complaints promotes settlements, avoids processing of frivolous claims, and strengthens the employer's confidence in the union. Without these screening and settlement procedures, . . . the costs of private dispute resolution could

---

[11]   See also, e.g., Marquez v. Screen Actors Guild, Inc., 525 U.S. at 45-46, 119 S. Ct. at 300; Vaughn v. Air Line Pilots Ass'n, Int'l, 604 F.3d at 709; Pinkney v. Progressive Home Health Servs., 367 F. App'x at 212; Soto v. ECC Indus., Inc., 358 F. App'x at 221; Cover v. Am. Postal Workers Union-AFL-CIO, 357 F. App'x at 338; Rosado v. Potter, 295 F. App'x at 425; Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers, 415 F.3d at 282-83; Wilder v. GL Bus Lines, 258 F.3d at 129; Acosta v. Potter, 410 F. Supp. 2d at 308; Tomney v. Int'l Ctr. for the Disabled, 357 F. Supp. 2d 721, 735 (S.D.N.Y. 2005) (Chin, D.J.).

11

ultimately render the system impracticable.'" Tomney v. Int'l Ctr. for the Disabled, 357 F. Supp. 2d

at 737 (quoting Int'l Bhd. of Elec. Workers v. Foust, 442 U.S. 42, 51, 99 S. Ct. 2121, 2127 (1979)).[12]

"In the grievance context, '[t]actical errors are insufficient to show a breach of the duty of fair

representation; even negligence on the union's part does not give rise to a breach.'"  Tomney v. Int'l

Ctr. for the Disabled, 357 F. Supp. 2d at 735; see also, e.g., Vaughn v. Air Line Pilots Ass'n, Int'l,

604 F.3d at 709; Cover v. Am. Postal Workers Union-AFL-CIO, 357 F. App'x at 338; Nicholls v.

Brookdale Univ. Hosp. & Med. Ctr., 204 F. App'x at 42; Barr v. United Parcel Serv., Inc., 868 F.2d

36, 43-44 (2d Cir.), cert. denied, 493 U.S. 975, 110 S. Ct. 499 (1989); Jordan v. Viacom Outdoor

Group, 475 F. Supp. 2d at 445.   "Although 'a union may not arbitrarily ignore a meritorious

grievance or process it in perfunctory fashion,' there is no 'absolute right to have [a] grievance taken

to arbitration.'"  Tomney v. Int'l Ctr. for the Disabled, 357 F. Supp. 2d at 735; see also, e.g.,  Vaca

v. Sipes, 386 U.S. at 191, 87 S. Ct. at 917; Spellacy v. Airline Pilots Ass'n-Int'l, 156 F.3d 120, 128

(2d Cir. 1998), cert. denied, 526 U.S. 1017, 119 S. Ct. 1251 (1999).

      "Second, if plaintiffs establish the first element of a DFR claim, they must then also

prove that there was 'a causal connection between the union's wrongful conduct and their injuries.'"

White v. White Rose Food, 237 F.3d at 179.[13]

---

[12]      "The federal laws governing the union employer relationship simply do not give [plaintiff] an absolute right to have [his] grievance taken to arbitration, regardless of its merit under the applicable CBA." Tomney v. Int'l Ctr. for the Disabled, 357 F. Supp. 2d at 737; see also, e.g., Vaca v. Sipes, 386 U.S. 171, 191, 87 S. Ct. 903, 917 (1967); Jordan v. Viacom Outdoor Group, 475 F. Supp. 2d at 444-45.

[13]      See also, e.g., Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers, 415 F.3d at 283; Spellacy v. Airline Pilots Ass'n-Int'l, 156 F.3d at 126; Tomney v. Int'l Ctr. for the Disabled, 357 F. Supp. 2d at 735.

"Because a union's breach of the duty of fair representation 'is a prerequisite to consideration of the merits of plaintiff's claim against' an employer for breach of a CBA, courts presented with hybrid claims need not reach the question of whether the employer violated the CBA unless the union has acted arbitrarily, in bad faith, or discriminatorily." Acosta v. Potter, 410 F. Supp. 2d at 309.[14/]

B.    **The Union Satisfied its Duty of Fair Representation**

The Union promptly responded to Castro's initial complaint by filing a grievance against CAS.  (See page 3 above.)  Indeed, the Union pursued Castro's claim all the way to arbitration, but Arbitrator Adelman ruled against the Union and held that CAS had not received the requisite funding and that the pay schedule Castro now seeks to enforce was "null and void."  (See page 3 above.)  After Arbitrator Adelman ruled against the Union, the Union renegotiated the CBA wage provisions and obtained pay increases for Castro (and its other members).  (See page 4 above.)

Castro presents no facts giving rise to an inference that the Union's conduct was "arbitrary, discriminatory or in bad faith."  (See cases cited at page 9 & n.10 above.)  The mere fact that Castro is unhappy with the results of the grievance and arbitration process does not mean that the Union breached its duty of fair representation.  Castro's belief that CAS obtained money from the Port Authority, based solely on a Port Authority memorandum referring to a settlement that occurred two years after the February 2008 deadline in the CBA's Contingency Clause, is insufficient to defeat the Union's summary judgment motion.  See, e.g., Smith v. New Venture Gear, Inc., 319 F. App'x

---

[14/]    See also, e.g., Pinkney v. Progressive Home Health Servs., 367 F. App'x at 212; Nicholls v. Brookdale Univ. Hosp. & Med. Ctr., 204 F. App'x at 42; Kavowras v. N.Y. Times Co., 132 F. App'x 381, 383 (2d Cir. 2005); Wilder v. GL Bus Lines, 258 F.3d at 129; White v. White Rose Food, 237 F.3d at 183; Young v. U.S. Postal Serv., 907 F.2d 305, 307 (2d Cir. 1990); Jordan v. Viacom Outdoor Group, 475 F. Supp. 2d at 444.

52, 58 (2d Cir. 2009) (Plaintiff's "conclusory claim that the Union did not 'adequately deal [with] his claim'" raises no issue of fact "with respect to whether the Union performed its duties adequately."); Turner v. Davidson/Gilmour Pipe Supply, No. 04 CV 3278, 2006 WL 1652613 at *6 (E.D.N.Y. June 14, 2006) (Summary judgment granted where "[a]side from conclusory allegations, plaintiff fail[ed] to put forth any evidence indicating that [the Union] acted in an arbitrary or discriminatory manner by failing to pursue plaintiff's complaint."); Tomney v. Int'l Ctr. for the Disabled, 357 F. Supp. 2d 721, 736 (S.D.N.Y. 2005) (Chin, D.J.) (Summary judgment granted where plaintiff's "conclusory allegations that the Union's 'representation of [plaintiff] in her arbitration was so ineffective that it caused [plaintiff] to lose her back pay award' is not supported by any concrete evidence."); McGovern v. Local 456, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 107 F. Supp. 2d 311, 320 (S.D.N.Y. 2000) ("Conclusory and vague allegations are too speculative to support a claim for breach of the duty of fair representation."); Herr v. Cineplex Odeon Corp., 92 Civ. 5447, 1994 WL 75008 at *13 n.9 (S.D.N.Y. Mar. 4, 1994) ("[C]onclusory allegations absent factual detail will not support a claim that a union breached its duty of fair representation.").

Castro's allegation that the Union should have delayed arbitration until after the settlement between CAS and the Port Authority is meritless.  (Dkt. No. 33: Castro Br. at 1).  Even if the settlement agreement between the Port Authority and CAS proved that CAS had received the funding specified in the Contingency Clause prior to the Arbitration Award, which it does not (see page 15 n.15 below), the Union's decision to proceed to arbitration immediately does not constitute a breach of the duty of fair representation.  Tactical decisions regarding the resolution of a grievance are within the Union's discretion, and even negligence by the Union would not give rise to a breach.

See, e.g., Cover v. Am. Postal Workers Union-AFL-CIO, 357 F. App'x 336, 338 (2d Cir. 2009) (Negligence is "insufficient to meet the demanding standard" required to show breach of the duty of fair representation.); Nicholls v. Brookdale Univ. Hosp. & Med. Ctr., 204 F. App'x 40, 42 (2d Cir. 2006) ("While the Union may have committed a tactical (or even a negligent) error, such an error, even if established, does not constitute a breach of the Union's duty."); Barr v. United Parcel Serv., Inc., 868 F.2d 36, 43 (2d Cir. 1989) ("While each of the specifically alleged breaches may, with the benefit of hindsight, be viewed as a possible tactical error by [the Union], none of them, taken either singly or collectively, are nearly sufficient to make out a prima facie case that [the Union] breached its duty fairly to represent" plaintiff.); Beachum v. AWISCO N.Y., 09 Civ. 7399, 2011 WL 1045082 at *13 (S.D.N.Y. Mar. 16, 2011) (Union's choice of tactical strategy at arbitration hearings, even if erroneous tactical decision or negligent, is insufficient to show a breach of duty of fair representation.); Seeman v. Local 32B-32J, Serv. Emps. Union, 769 F. Supp. 2d 615, 621 (S.D.N.Y. 2011) ("The standard for arbitrariness does not encompass tactical errors or negligence."  To show bad faith, plaintiff "'requires proof that the union acted with an improper intent, purpose, or motive.'"); Murray v. Nine Mile Point Nuclear Station, LLC, No. 07-CV-0147, 2010 WL 3909472 at *12 (N.D.N.Y. Sept. 30, 2010) ("[I]t is well settled that 'the duty of fair representation is not breached where the union . . . engages in mere negligent conduct.'" (quoting Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1153-54 (2d Cir. 1994)); Nieves v. Dist. Council 37, 04 Civ. 8181, 2009 WL 4281454 at *11 (S.D.N.Y. Nov. 24, 2009) ("[R]outine tactical decisions, however, are insufficient to show a breach of the duty of fair representation."), aff'd, 420 F. App'x 118 (2d Cir. 2011); Tomney v. Int'l Ctr. for the Disabled, 357 F. Supp. 2d at 736 ("'[E]ven

negligence on the union's part does not give rise to a breach.'" (quoting <u>Barr</u> v. <u>United Parcel Serv.,</u>

<u>Inc.</u>, 868 F.2d at 43)).

Because Castro offers no evidence that the Union breached its duty of fair

representation, the Union's summary judgment motion is <u>GRANTED</u>.[15/]

---

[15/]   The Court need not reach the issue of whether CAS breached the CBA because Castro has not proven that the Union breached its duty of fair representation.  <u>See</u>, <u>e.g.</u>, <u>Seeman</u> v. <u>Local 32B-32J, Serv. Emps. Union</u>, 769 F. Supp. 2d at 623 (Plaintiff's "claim against the Union for violating its duty of fair representation fails. As a result, the hybrid § 301/fair representation claim fails against both defendants as a matter of law."); <u>Jordan</u> v. <u>Nat'l Postal Mail Handlers Union, Local 300</u>, No. 07 CV 606, 2008 WL 465503 at *2 (E.D.N.Y. Feb. 15, 2008) (court need not consider whether the employer breached the CBA because Union did not breach its duty of fair representation); <u>Mijatovic</u> v. <u>Frank Brunckhorst Co.</u>, No. 05 CV 1468,  2007 WL 2907410 at *4 (E.D.N.Y. Sept. 28, 2007); <u>Jordan</u> v. <u>Viacom Outdoor Grp.</u>, 475 F. Supp. 2d 440, 447 (S.D.N.Y. 2007); <u>see also</u> cases cited on page 12 & n.14 above.

In any event, Arbitrator Adelman ruled in his "final and binding" December 2009 Award that CAS had not violated Article IX(2) of the CBA because CAS had not received the necessary funds from the Port Authority, and thus according to the CBA itself, Article IX(2) was "null and void."  (<u>See</u> page 3 above.)  To the extent that Castro is attempting to challenge the validity of the Arbitration Award with this action, he lacks standing.  Unless "the union breached its duty of fair representation, an individual employee represented by a union generally does not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties."  <u>Katir</u> v. <u>Columbia Univ.</u>, 15 F.3d 23, 24-25 (2d Cir. 1994); <u>see also</u>, <u>e.g.</u>, <u>Duran</u> v. <u>Cushman & Wakefield Inc.</u>, 06 Civ. 14411, 2007 WL 2667128 at *3 (S.D.N.Y. Sept. 10, 2007); <u>Meshkin</u> v. <u>Vertrue Inc.</u>, No. 07 CV 109,  2007 WL 2462172 at *2 (D. Conn. Aug. 28, 2007).

Finally, even if Castro could attack the legitimacy of the Arbitration Award, the evidence he presents does not show that CAS breached the CBA.  Castro relies exclusively on the Port Authority committee meeting summary describing the April 2010 settlement between the Port Authority and CAS, but the summary gives no indication that the Port Authority provided the funds stipulated by the CBA specifically for wage increases, or, for that matter, that CSA received any such funds before February 15, 2008.  Indeed, it was an undisputed fact at the Union-CAS arbitration that the Port Authority had not provided such funding.  (Opinion & Award at 5.)

16

## CONCLUSION

For the reasons set forth above, the Union's summary judgment motion (Dkt. No. 25)

is GRANTED, and plaintiff's complaint is dismissed.[16]

SO ORDERED.

Dated:        New York, New York
              August 5, 2011

                                        _____
                                        **Andrew J. Peck**
                                        United States Magistrate Judge

Copies to:    Jose Castro (Regular & Certified Mail)
              Lyle D. Rowen, Esq.

---

[16]   If the pro se plaintiff requires copies of any of the cases reported only in Westlaw, plaintiff
       should request copies from defense counsel. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir.
       2009); SDNY-EDNY Local Civil Rule 7.2.

H:\OPIN\CASTRO-Jose